[No. B084291. Second Dist., Div. Two. June 16, 1995.]

CHANTAL S. KILROY, Plaintiff and Respondent, v.
JOHN B. KILROY, Defendant and Appellant.

**COUNSEL**

Goldberg & Andrus, Jerome L. Goldberg and Lesley A. Andrus for Defendant and Appellant.

Jaffe & Clemens, Bruce A. Clemens and David M. Luboff for Plaintiff and Respondent.

## OPINION

FUKUTO, J.—May a court order payment of temporary spousal support and litigation expenses, including attorney fees, in a civil action by one spouse to enforce the other's duty of support during the marriage? Although this precise question has not been previously decided, closely related precedent dictates an affirmative answer. We therefore affirm the interim support orders under review, which are challenged only for lack of authority.

### STATEMENT

In January 1994, plaintiff, Chantal S. Kilroy, commenced suit for spousal support and related injunctive relief against her husband, defendant John B. Kilroy, pursuant to Family Code sections 4300 and 4303.[1] The complaint alleged that Mr. Kilroy was failing and refusing to support his wife, in accordance with their marital standard of living, "or at all." Plaintiff further alleged that defendant had closed her charge accounts, which she required for her self-support, had refused to renew insurance on her valuables, and had attempted to deny her access to their residence, or use of it for plaintiff's charitable activities. Plaintiff prayed injunctive relief against these deprivations, as well as temporary and permanent support, including attorney fees and costs.

In a declaration in support of provisional relief, plaintiff stated that she and her husband had been married for over eight years. Plaintiff described their marital lifestyle, and the incidents of her husband's recent deprivation of support. She declared she had no independent income, whereas defendant owned a large corporation, from which he received a substantial salary. An Italian citizen, employed overseas before the marriage but not since, plaintiff stated she possessed no locally employable skills. She requested interim attorney fees, as well as accountant fees to assist in establishing an appropriate support order.

Defendant answered the complaint with a general denial, also praying for attorney fees. He also filed a cross-complaint, the first amended version of which alleged, on information and belief, that the parties' marriage was invalid because plaintiff had still been married when it transpired. Defendant

---

[1]Undesignated section citations hereafter are to the Family Code.

Section 4300 provides: "Subject to this division, a person shall support the person's spouse." (See also § 720 ["Husband and wife contract toward each other obligations of mutual respect, fidelity, and support."].)

Section 4303 provides in part: "(a) The obligee spouse, or the county on behalf of the obligee spouse, may bring an action against the obligor spouse to enforce the duty of support."

therefore sought a declaration invalidating the parties' prenuptial agreement, under which plaintiff stood to receive sizeable financial benefits in the event the marriage was dissolved.[2] He also sought damages on account of expenditures made after the parties' alleged separation in 1993.

On plaintiff's order to show cause for temporary relief, the court entertained at length defendant's objection that it lacked jurisdiction to award such relief, but ultimately decided that it had jurisdiction. The court then rendered an initial order for temporary support, including attorney fees, and related injunctive relief. The court also appointed a retired superior court judge as referee, to hear and determine reserved matters, with power to modify the initial temporary order. Defendant noticed an appeal from that order.

More extensive hearings were held before the referee, whom the parties stipulated could act as a temporary judge in issuing a new order. The referee ultimately issued such an order, providing for temporary spousal support, together with substantial attorney and accountant fees (payable in installments), and injunctive relief regarding numerous matters, including the parties' several dwellings. Defendant appealed from this order too, and we consolidated the two appeals.

## DISCUSSION

 Defendant challenges not the substance of the orders under review, but rather the overall authority of the court to make them. Although conceding, as he must, that the court will be authorized to render a permanent support order by judgment at the end of the case, defendant argues that such relief pendente lite is not authorized by statute, and therefore at all. Defendant relies primarily on the fact that although the Family Code specifically provides for pendente lite support, and attorney fees and expenses, in proceedings for marital dissolution, legal separation, and marital nullity (§§ 2010, subds. (d), (f), 2030, 3600), it does not so provide with respect to actions under section 4303. Absent such authorization, defendant contends, the trial court had no jurisdiction to render such orders.

Defendant's position is refuted by a consistent line of decisions that recognize the inherent, equitable power of California courts to order pendente lite support and attorney fees when enforcing statutory rights of support, and which dismiss as insignificant the absence of specific

---

[2]The extent of these benefits would vary depending upon which party initiated the dissolution. Defendant asserts that this disparity underlies plaintiff's election to pursue the present civil action instead of petitioning for dissolution.

statutory provision for those provisional remedies in the particular action or proceeding.

The leading modern decision is *Hudson* v. *Hudson* (1959) 52 Cal.2d 735 [344 P.2d 295] (per Traynor, J.) (*Hudson*). In that case a wife had filed for divorce, but the husband was first granted a divorce in another state. The husband then contested the wife's entitlement to obtain temporary and permanent support in California. After recognizing the concept of "divisible divorce," which left the wife's substantive right to support unaffected by the foreign status decree, the court rejected the husband's arguments that temporary support was unavailable because it was only provided for by the then Civil Code (now Family Code) sections dealing with divorce.

The court first found those sections irrelevant in terms, assuming the husband's divorce were effective, because "they deal solely with the award of alimony or support in divorce cases. [But] [a] wife's right to support arises from the marriage and is recognized by statute." (*Hudson, supra,* 52 Cal.2d at p. 743.)

The court then squarely rejected the husband's contention "that our courts can grant alimony only in an action for divorce, on the ground that it is only in such an action that the statutes provide for alimony." (*Hudson, supra,* 52 Cal.2d at p. 744.) The court noted that it had rejected that argument as early as 1869, in a suit for support like the present one, by a wife within the marriage. (*Galland* v. *Galland* (1869) 38 Cal. 265.) There "The court held that it had general equity powers to grant alimony in cases aside from those specifically provided for by statute," and construed the statutes as dealing with alimony not in general but only as an incident to divorce. (*Hudson, supra,* at p. 744.) In other words, " 'a provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions.' " (*Ibid.,* quoting *Galland* v. *Galland, supra,* at p. 268.)

Having so reaffirmed that the wife could seek alimony even without specific statutory provision for that remedy, the court concluded that "it follows that she may receive temporary alimony, costs, and fees to enable her to continue the suit when she has shown that she needs such relief and that defendant has the ability to provide such assistance." (*Hudson, supra,* 52 Cal.2d at p. 745.)

*Hudson* was followed in *Hood* v. *Hood* (1962) 211 Cal.App.2d 332 [27 Cal.Rptr. 47] (*Hood*), which affirmed an order granting pendente lite support and attorney fees to a former wife, in her action to establish and enforce two

foreign alimony judgments. The court recognized and applied the *Hudson* decision as "judicial recognition of a general equity power to award alimony, and more pertinent to the case at bar, an equity power, independent of statute, to award alimony pendente lite." (*Hood, supra*, at p. 337.)

*Hood* also underscored the interrelationship, indeed identity, of pendente lite litigation expenses, including attorney fees, with allowable temporary support. "The purpose of alimony pendente lite is to insure that the person will have support and be able to conduct her side of the litigation pending the trial of the issue made by the pleadings." (*Hood, supra*, 211 Cal.App.2d at p. 338.) In line with this understanding, *Kruly* v. *Superior Court* (1963) 216 Cal.App.2d 589 [31 Cal.Rptr. 122] affirmed an order requiring a daughter, who had suffered a support judgment in favor of her father, to pay him $1,000 to enable him to oppose her appeal from that judgment, notwithstanding that the statutes establishing the father's right to sue for support made no mention of such fees pending the litigation.

A similar ruling obtained with respect to an appeal from a judgment of annulment in *Dunphy* v. *Dunphy* (1911) 161 Cal. 87 [118 P 445]. There the court reiterated, " 'The power to allow alimony and counsel fees to the wife in order to enable her to live pending the action, and to present her defense, if she has one, must be regarded as incidental and necessary in all matrimonial actions.' " (*Id.* at p. 91.) Traditional recognition of litigation expenses in a support action as an incident of the principal relief refutes defendant's reliance on Code of Civil Procedure section 1021's general enunciation of the American rule regarding attorney fees.[3]

The foregoing authorities uniformly recognize the equitable power of the court, in an authorized action or proceeding for support, to grant pendente lite support and litigation expenses without statutory authorization in so many words. Moreover, defendant's further contention that the court below lacked power to issue temporary injunctive orders, because the Family Code does not provide for them in actions under section 4303, further exposes the fallacy of contending that that code's specifications are the source and measure of the court's equitable, remedial authority. Code of Civil Procedure section 526 authorizes injunctive relief in circumstances that would appear to embrace the range of injunctive orders made here. ▋ By extending such remedies specifically to dissolution, separation, and nullity proceedings, the Legislature did not divest the courts of authority to apply

---

[3]That section provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

them in other actions and proceedings. As was stated in *Galland* v. *Galland*, *supra*, 38 Cal. at page 268, "If [the Legislature] had provided that a writ of *ne exeat* or *distringas* might issue . . . in an action for divorce, it would scarcely be claimed by any one that this was equivalent to a declaration that such writs should not issue in any other class of actions. For the same reason, a provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions." (Accord, *Hudson*, *supra*, 52 Cal.2d at p. 744.)

 Defendant yet contends that recognition of an "inherent" equitable authority to award temporary support in this action is precluded by *Friedman* v. *Friedman* (1993) 20 Cal.App.4th 876 [24 Cal.Rptr.2d 892] (*Friedman*). That case reversed a temporary support order that had been granted to one of two unmarried partners, in a suit for damages and equitable relief following the breakup of their relationship. The court first found neither statutory nor inchoate authority for a provisional remedy styled "order to pay money." (*Id.* at pp. 884-885.) Next, it held that the trial court's inherent equitable authority did not extend to fashioning a temporary support order "as a substantive right"—either under *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], which had not recognized support as an independent right between unmarried partners, or under the Family Law Act, which provided no such rights. The court stated, "[A]lthough courts of equity have broad powers, they may not create totally new substantive rights under the guise of doing equity." (*Friedman*, *supra*, at p. 886.) Finally, viewing the temporary support order as a preliminary injunction, the court found it unsupported by sufficient proof of either an implied contract for support (the plaintiff's theory), impending irreparable injury, or inadequacy of the legal remedy of damages.

*Friedman* is not inconsistent with the *Hudson* line of cases, and it is fundamentally distinguishable both from them and from the present case, which involves spousal support, not an alleged contractual obligation to support. As a married spouse, plaintiff *is* vested with a substantive right to support, not as a putative product of equity, but by virtue of statutes that embody a fundamental public policy of this state. (See fn. 1, *ante*.) Plaintiff thus invokes equity not to create a new right, but rather simply to furnish her a remedy—pendente lite support—historically recognized as necessary for enforcement and fulfillment of her conceded right. Defendant's assertion that the duty of spousal support and the contractual support duties (if any) of unmarried partners are coequal in terms of entitlement to provisional remedies is simply wrong. "[T]he Legislature [and the Supreme Court] ha[ve] concluded that specific burdens attend upon the assumption of the married state . . . and these burdens include being held liable for pendente

lite support even before conclusive adjudication of entitlement takes place. No such burdens have been imposed on ordinary contracting parties." (*Schafer* v. *Superior Court* (1986) 180 Cal.App.3d 305, 310 [225 Cal.Rptr. 513].)

██ Defendant also relies on *Eisenring* v. *Superior Court* (1917) 34 Cal.App. 749 [168 P. 1062], as allegedly confirming that pendente lite support is not available in the absence of specific statutory provision for it. *Eisenring* was a divorce case in which the Court of Appeal overruled an order for pendente lite support of the husband by the wife, on grounds the Civil Code's provision for pendente lite support in divorce cases ran only in favor of wives.[4] The court stated, "To our minds, this section measures the power of the court in the matter of allowing suit money and alimony *pendente lite;* and, as said in *Hagert* v. *Templeton,* 18 N. D. 525 [citations], 'was intended to be exclusive and to embrace the entire subject matter of the allowance of alimony *pendente lite.*' " (*Id.* at p. 750.)

*Eisenring* may have been good law, in its day, for divorce cases. But its quoted rationale cannot properly be perceived to extend beyond such cases. ██ Any such implication would directly conflict with the Supreme Court's repeated declaration that legislative provisions for temporary support remedies in divorce cases were intended neither to address nor to preempt the availability of such remedies in other types of cases involving spousal support, including suits like this one. (*Hudson, supra,* 52 Cal.2d at p. 744; *Galland* v. *Galland, supra,* 38 Cal. 265.)

In sum, the trial court correctly concluded that it had jurisdiction to award pendente lite spousal support, litigation expenses, and injunctive relief to plaintiff in this action for spousal support between married spouses.

### DISPOSITION

The orders under review are affirmed.

Boren, P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 24, 1995.

---

[4]The Legislature eliminated this asymmetry 10 years later. (See 11 Witkin, Summary of Cal. Law (9th ed. 1990) Husband and Wife, § 172, p. 207.)