Filed 5/20/13  P. v. Hoyt CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C068961 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F02426) |
| v. | |
| JOHNAE RAJSHAN HOYT, | |
| Defendant and Appellant. | |

Defendant Johnae Rajshan Hoyt pled guilty to assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count one), threatening to commit a crime that would result in death or great bodily injury (§ 422; count three), torturing a dog (§ 597, subd. (a); count four), dissuading a witness (§ 136.1, subds. (b)(2), (c)(1); count five), and misdemeanor vandalism (§ 594, subd. (a); count six).  Defendant also admitted having served two prior prison terms.  (§ 667.5, subd. (b).)  In exchange for his guilty pleas, a charge of attempted robbery was dismissed, which dismissal defendant understood would make him eligible for day-for-day or "half time" conduct credit.  (§§ 211, 664; count two.)

---

[1] Further undesignated statutory references are to the Penal Code.

The trial court sentenced defendant to state prison for the stipulated term of eight years four months.  (§ 1170.15.)  It awarded him 470 days of custody credit and 470 days of conduct credit.  Defendant obtained a certificate of probable cause.

On appeal, defendant contends (1) he should be allowed to withdraw his "illusory" guilty pleas, (2) his trial counsel rendered ineffective assistance, and (3) his fines should be reduced to the statutory minimum due to misadvisement by the trial court.  As we will explain, one of the terms of defendant's plea bargain, his guilty plea to count 1 as a "non-strike," cannot be implemented as currently entered.  Another material term of the plea agreement, defendant's eligibility for day-for-day presentence conduct credit, cannot be fulfilled.

We shall reverse with instructions to permit defendant to withdraw his plea, should he choose to do so.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Crimes*

The case went to jury trial on all charges.  Before the parties resolved the case through a plea bargain, the evidence established the following.

On March 23, 2010, defendant went to the home of his former neighbor, Robert Burke, to pick up a car.  The car needed some repair work, and defendant asked Burke to help him with it.  Burke brought some tools and tried to get a neighbor, Allen Jones, to help him with the work.  However, once Jones learned that defendant did not have any money to pay for the work, he decided not to help.

When defendant realized that Burke and Jones would not be working on the car, his demeanor changed, suggesting he would be violent.  Defendant became even more upset when Burke refused to share his marijuana with defendant.

Defendant picked up a stick from Burke's front porch and swung the stick at Burke multiple times.  On one occasion, the stick came within approximately a half inch

2

of striking Burke in the head. As he was swinging the stick at Burke, defendant was threatening to break Burke's windows if he did not bring defendant some marijuana.

Burke ran off the porch and found a metal stick that he could use to defend himself. When Burke returned to the porch defendant backed away, allowing Burke to enter his house, lock the door, and telephone 911.

While Burke was on the telephone with the 911 operator, he heard defendant threaten to get a gun, blow Burke's head off and kill him. Jones, who was still outside, saw defendant hit Burke's trash can with the stick and heard him tell Burke that, if he did not come outside, defendant was going to hit Burke's dog. When Burke did not come out, defendant used the stick to hit the small dog. The dog had to be euthanized due to the injuries he suffered that day.

Six days later, defendant telephoned Justin Edginton, a mutual friend of defendant and Burke. Defendant told Edginton to telephone Burke and advise him that, if Burke did not recant his story about what had happened six days earlier, defendant would "go all-out" on Burke.

*The Plea Bargain*

On February 15, 2011, after the first day of witness testimony at trial, the parties informed the court there was a contemplated change of plea. The People outlined the proposed plea agreement in part as follows: "My proposed offer today since we started trial, is for the Defendant to plead to the 245, which is Count 1, as a non strike, with force likely, for the low term of two years." The agreement further contemplated that the People would move to dismiss count 2, the attempted robbery, and defendant would plead to the remaining counts and admit two prison priors for a stipulated sentence of eight years and four months in state prison.

The trial court stated the trial testimony constituted a sufficient factual basis to satisfy all the counts to which defendant was pleading. The court inquired of defense counsel whether the testimony of three specified witnesses was "sufficient testimony

3

and/or factual basis to support your client's pleas to Count 1, 3, 4, 5 and 6, sir?" Defense counsel answered, "Yes, Your Honor."

Before accepting defendant's pleas, the court advised defendant that both count three, criminal threats, and count five, threatening a witness with force or violence, were strikes. The court advised defendant of his rights and twice asked if any other promises had been made. At the second of the two queries, defendant asked to speak with his lawyer. Immediately after the conclusion of that private conversation, defense counsel told the court that "one of the things" influencing defendant's decision to plead pursuant to the agreement was the dismissal of count two, a violent felony. "Based upon the law, it appears when sentencing is done, Mr. Hoyt would be eligible for half time, and that is of great import to him, and has drastically influenced his decision as well." The court asked the People's representative if that was her understanding as well; she replied, "As far as I know." The court noted defendant had a "substantial amount" of presentence credits. The trial court then (properly) incorporated defendant's "understanding of credits that [he] would receive at the Department of Corrections and at sentencing" as one of the "promises or representations" causing him to change his plea.

When taking defendant's plea to count one, a violation of section 245, subdivision (a)(1), charged as assault with a deadly weapon and never amended, the trial court asked, "[t]o that offense as a non strike, sir, what is your plea?" Defendant answered, "Guilty, Your Honor." When taking the pleas to counts three and five, the court specified the two charges were strikes within the meaning of the three strikes law.

*Sentencing and Appeal*

The trial court sentenced defendant to an aggregate term of eight years and four months, in accordance with his plea bargain. Defendant had accumulated 470 days of presentence custody credit; the trial court awarded him 470 days of conduct credit. At sentencing, for the first time, the People questioned whether defendant should receive 470 days of conduct credit. Defense counsel responded that since the trial court had

4

sentenced defendant to state prison rather than county jail, he should receive conduct credit equal to his custody credit. The trial court agreed, referencing recent amendments to the relevant statutes, and awarded defendant 470 days of conduct credit.

Defendant obtained a certificate of probable cause and appealed.

## DISCUSSION

### I

### *The Law of Plea Bargains*

Plea bargaining is now widely accepted. "'[W]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.' [Citation.]" (*Bordenkircher v. Hayes* (1978) 434 U.S. 357, 361, 364 [54 L.Ed.2d 604, 609].) Our Supreme Court has explained that, "'[p]lea negotiations and agreements are an accepted and "integral component of the criminal justice system and essential to the expeditious and fair administration of our courts." [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments. [Citations.]' [Citation.] A plea agreement 'is a tripartite agreement which requires the consent of the defendant, the People and the court.' [Citations.] 'Acceptance of the agreement binds the court and the parties to the agreement.'" (*People v. Feyrer* (2010) 48 Cal.4th 426, 436-437.)

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York* (1971) 404 U.S. 257, 262, [30 L.Ed.2d 427]; *People v. Walker* (1991) 54 Cal.3d 1013, 1024 (*Walker*), overruled on another ground in *People v. Villalobos* (2012) 54 Cal.4th 177, 183 (*Villalobos*). If defendant elects to maintain the plea bargain, the People are bound by such election. (*Ellsworth v. Superior Court* (1985) 170 Cal.App.3d 967, 973 ["It is well settled that the People are strictly held to the terms of a plea bargain made with a criminal defendant"].)

"A violation of a plea bargain is not subject to harmless error analysis. A court may not impose punishment significantly greater than that bargained for by finding the defendant would have agreed to the greater punishment had it been made a part of the plea offer. 'Because a court can only speculate why a defendant would negotiate for a particular term of a bargain, implementation should not be contingent on others' assessment of the value of the term to defendant. [para.] . . . [para.] Moreover, the concept of harmless error only addresses whether the defendant is prejudiced by the error. However, in the context of a broken plea agreement, there is more at stake than the liberty of the defendant or the length of his term. "At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice. . . .'" [Citation.]" (*Walker, supra,* 54 Cal.3d at p. 1026.)

Where a plea bargain is induced by illusory, unenforceable promises, defendant must be given an opportunity to withdraw his plea. (*People v. DeVaughn* (1977) 18 Cal.3d 889, 896 (*DeVaughn*); *People v. Thurman* (2007) 157 Cal.App.4th 36, 42-43; *Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 792.) Where a plea bargain cannot be specifically enforced, the remedy is to allow the defendant to withdraw the plea and go to trial on the original charges. (*In re Jermaine B.* (1999) 69 Cal.App.4th 634, 639 (*Jermaine B.*)).

"Where the plea is accepted by the [People] in open court and is approved by the court . . . the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5; *Jermaine B., supra,* 69 Cal.App.4th at p. 639.)

II

*Illusory Promises*

Defendant contends he should be allowed to withdraw his guilty pleas, which were "illusory" in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. He contends his plea was based on three illusory promises that: (1) count one, assault, would be a "non-strike"; (2) count two, attempted robbery, (a violent

felony) would be dismissed; and (3) he would receive "half time" or day-for-day conduct credit in lieu of the 15 percent he would receive but for dismissal of the violent felony. Defendant contends these promises were illusory because they cannot be or have not been kept.

### A. *Assault as a Non-Strike*

The information alleged in count one that defendant committed a felony violation of section 245, subdivision (a)(1), in that he "did willfully and unlawfully commit an assault upon the person of ROBERT E. BURKE, with a deadly weapon and instrument other than a firearm, to wit, a stick." The information alleged that the offense is a serious felony under section 1192.7, subdivision (c)(23).

Any felony in which defendant personally uses a deadly or dangerous weapon is a serious felony. (§ 1192.7, subd. (c)(23).) A serious felony is a strike. (§ 667, subd. (d)(1); 1170.12, subd. (b)(1).)

Although the plea bargain, as recited by the People and repeated by the trial court, clearly stated that defendant was pleading to section 245, subdivision (a)(1) as a "non-strike," defendant contends this promise is illusory because in a future prosecution, the People could rely on the factual basis of the plea, the trial testimony, to establish that defendant used a deadly weapon. "As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.)

Although the "non-strike" aspect of defendant's plea bargain is clearly problematic, the problem is not that the *promise itself* is illusory, but rather that the foundation for its implementation was inadequate. The trial court accepted defendant's plea to count one as a "non-strike," although the information continued to allege it was a serious felony and the factual basis for the plea supported it as a serious felony through defendant's personal use of a dangerous or deadly weapon. The attempt to agree that

7

count 1 was a "non-strike" when the count continued to charge a strike offense and the factual basis supported the strike offense created a conflict between the intent of the parties (and the trial court in accepting the plea as a "non-strike") and the reality of the offense of conviction. Thus, clearly without the intention to do so, the court "proceed[ed] as to the plea other than as specified in the plea." (§ 1192.5.) This conflict may be easily resolved by conforming the charge and the factual basis to the plea bargain.

A conviction under section 245, subdivision (a)(1) can constitute a serious felony within the meaning of section 1192.7, subdivision (c)(23), and thus a strike, only "if the prosecution properly pleads and proves that defendant personally used a deadly or dangerous weapon in the commission of the offense." (*People v. Equarte* (1986) 42 Cal.3d 456, 465.) Accordingly, for the trial court to properly accept a plea to felony assault as a "non-strike," the People must first move to amend the information to charge assault "by any means of force likely to produce great bodily injury"[2] and to delete the allegation that the offense is a serious felony. Defendant should then plead explicitly to assault with "force likely" and the parties should abridge and thus conform the factual basis of the plea to the amended charge.

Since, as we explain *post*, we must reverse and remand to permit defendant to withdraw his plea due to the illusory promise as to conduct credit, on remand the parties will have the opportunity to lay a proper foundation if defendant elects to maintain the plea bargain (with the understanding that his conduct credits will be limited, as we discuss *post).*

---

[2] We recognize that section 245 has been amended. Now, assault by any means of force likely to produce great bodily injury is a separate subdivision, section 245, subdivision (d). (Stats. 2011, ch. 183, § 1.)

*B.     Dismissal of Count Two*

Defendant's plea agreement contemplated that count two would be dismissed. Although dismissal of count two was not discussed on the record at sentencing, the minute order for the hearing indicates that the prosecutor's oral motion to dismiss count two in view of the plea was granted. Thus, this promise was not illusory; it was kept.

*C.     Conduct Credit*

Defendant contends the plea bargain promised him day-for-day or "half time" conduct credit and he cannot receive this promised term. Defendant recognizes that because he pled guilty to two serious felonies (counts three and five), under the law in effect at the time he is limited to one day of conduct credit for every two days of actual time in custody. The People agree that the "wrong formula was used."

Defendant's offenses occurred on March 23 and 29, 2010. At that time, the relevant law on conduct credit was section 4019, as amended by Senate Bill No. 18. (Stats. 2009-2010, ch. 28 (Third Extra, Sess.) (SB No. 18 (Third Extra. Sess.)), § 50, eff. Jan. 25, 2010.) "The relevant language of former section 4019 provided: 'It is the intent of the Legislature that if all days are earned under this section, *a term of four days will be deemed to have been served for every two days spent in actual custody . . . .*' [Citation.] [¶] Prisoners who were required to register as sex offenders, had been committed for serious felonies, or had prior convictions for serious or violent felonies were not eligible for credit at the increased rate. [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319, fn. 5.) For those with serious felony convictions, like defendant here, the prior version of section 4019 applied and it provided: "It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody." (Stats.1982, ch. 1234, § 7, p. 4554.)

Defendant was not eligible for the increased conduct credit provided for by Senate Bill No. 18, day-for-day or "half time," due to his pleas to two serious felony

convictions--counts three and five. Accordingly, his conduct credits must be reduced from 470 days to 234 days.

Defendant contends the promise of one-for-one or "half time" credit was a term of his plea bargain. In response to a question from the trial court about promises made to defendant, defense counsel made a record that defendant's eligibility at sentencing for such credit was "of great import to him, and has drastically influenced his decision as well." The People confirmed the accuracy of defendant's understanding somewhat ambiguously by stating, "As far as I know."

The People do not dispute that the promise of enhanced conduct credit was a term of the plea bargain. They concede defense counsel's statement "transformed the issue of custody credits from a routine, peripheral matter to a material term of the agreement." Rather, the People contend the error as to the amount of conduct credit was invited error. The People assert the request for half time credit was a tactical decision by defense counsel to get "the best possible deal for his client." The People's argument is not well-taken; consequently, we reject it.

The invited error doctrine applies only if it is "'clear that counsel acted for tactical reasons and not out of ignorance and mistake.'" (*People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 49.) Advancing a mistaken view of the law that can easily be discovered and corrected hardly qualifies as a tactical reason for the action. Here, both parties as well as the trial court were mistaken about the calculation of credits at the time of the plea. The People raised the issue only at sentencing, and even then offered no assistance to the trial court in resolving the issue. The error was not invited; it was shared by everyone involved. The plea bargain simply contained a term--agreed to by defendant, the People, and the trial court--that the trial court was without power to fulfill. (See, e.g., *DeVaughn, supra,* 18 Cal.3d at p. 896 [beyond the power of the trial court to bargain with defendants to preserve for appellate purposes the issues of involuntariness of statement].)

10

Where a plea bargain includes a term that cannot be fulfilled, defendant's constitutional rights are violated if the unfulfilled term is "significant." (*Walker, supra,* 54 Cal.3d at p. 1024; *People v. Arata* (2007) 151 Cal.App.4th 778, 787.) In *Walker*, the court found a $5,000 restitution fine was a significant deviation from the negotiated terms of the plea agreement, which had not mentioned any fine. (*Walker, supra,* at p. 1029.) Here the deviation is 236 days of conduct credit. In *In re Williams* (2000) 83 Cal.App.4th 936, a plea bargain included conduct credit, although the defendant may not have been eligible for such credit because he had committed escape. The appellate court noted that the violation of the plea bargain was not subject to harmless error analysis. "Accordingly, we do not speculate why petitioner negotiated for presentence credit as a material term of his sentence, but 194 days of credit amounts to six months' credit against a six-year term. That is hardly trivial." (*In re Williams, supra,* 83 Cal.App.4th at p. 944.) The case was remanded for determination of whether defendant was eligible for conduct credit. If he was not, he could withdraw from the plea bargain. (*In re Williams, supra,* at p. 946.)

As in *In re Williams*, *supra*, we find 236 days of credit is substantial and the record shows it was "of great import" to defendant and "drastically influenced his decision" to accept the plea bargain. Since defendant cannot receive what he was promised, he must be permitted to withdraw his plea. (*People v. Burns* (1993) 20 Cal.App.4th 1266, 1274.)

III

*Ineffective Assistance of Counsel*

Defendant contends his trial counsel rendered ineffective assistance based on the same three alleged illusory promises discussed in part II, *ante*. Since we have already resolved the issue of illusory promises, and we are reversing and remanding the case, we need not address this contention.

11

IV

*Failure to Advise of Restitution Fine*

Defendant contends the trial court erred during the plea colloquy when it failed to advise him of the section 1202.4 restitution fine and the section 1202.45 parole revocation fine.  Thus, he claims his $2,000 restitution fine and $2,000 parole revocation fine must be reduced to the statutory minimum of $200.  We disagree.

"[F]ailure to address the amount of a restitution fine in plea negotiations or during the plea colloquy does not transform imposition of such a fine into a violation of the plea agreement.  Instead, where neither the parties nor the trial court have specified the fine amount in the context of a plea bargain, '[t]he restitution fine shall be set at the discretion of the court . . . .'  [Citation.]  Because no specific amount of fine was expressly negotiated or otherwise made a part of the plea agreement here, it cannot be said that the $[2,000] restitution fine and $[2,000] parole revocation fine imposed more punishment than defendant bargained for."  (*Villalobos, supra,* 54 Cal.4th at pp. 185-186.)

**DISPOSITION**

The judgment is reversed and the matter remanded for the trial court to set a hearing within 30 days to provide defendant the option to withdraw his guilty plea and proceed to trial or other proceedings consistent with this opinion.


                                                            DUARTE               , J.

We concur:


_____NICHOLSON_____, Acting P. J.


_____HULL_____, J.